**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

    *-and-*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                                        7:19-cv-08785

| | |
|---|---|
| Michelle Ann Cicciarella, individually and on behalf of all others similarly situated<br><br>                        Plaintiff<br><br>               - against -<br><br>Califia Farms, LLC<br><br>                        Defendant | Class Action Complaint |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Califia Farms, LLC ("defendant") manufactures, distributes, markets, labels and sells almondmilk beverages purporting to be characterized by vanilla under the Califia Farms brand ("Products").

2. The Products are available to consumers nationwide from third-party retailers, including brick and mortar and online stores and directly from defendant's website.

1

3.  The Products are sold in sizes including 48 FL OZ (1.4 L) in regular and unsweetened varieties.

4.  The Products' labeling or advertising makes direct representations with respect to their primary recognizable and characterizing flavor, by the words "VANILLA" and "UNSWEETENED VANILLA" in the center of the label, and vignette, a vanilla flower on top of an almond, shown below.[1]



Vanilla　　　Unsweetened Vanilla

I.  Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

5.  By law, vanilla refers to the "the total sapid and odorous principles extractable from

---

[1] 21 C.F.R. § 101.22(i).

one-unit weight of vanilla beans."[2]

6.  Shortly after the passage of the Pure Food and Drugs Act of 1906, E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[3]

7.  This demand could not be met by the natural sources of vanilla, leading manufacturers to devise methods to imitate vanilla's flavor and appearance.

8.  Though the Pure Food and Drugs Act was enacted to "protect consumer health and prevent commercial fraud," little has changed in the past century beyond the artifices employed.[4]

9.  Daily headlines alert us to this resurgent international threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[5]

10.  While "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

11.  Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings."[6]

---

[2] 21 C.F.R. §169.3(c)
[3] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.
[4] Berenstein, 412.
[5] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.
[6] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

12. Its value as the second most expensive flavoring after saffron has made it a constant target of those seeking to dilute, imitate, fortify, and "extend" the flavor of this tropical orchid.[7]

13. The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities.[8]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Cheating on analytical tests by containing markers specifically tested for | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Cheating by giving consumers the impression the food or ingredient is present in greater amounts and/or higher quality form than it actually contains | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks they are a result of the product containing real vanilla bean, when the ground beans have been exhausted of flavor, and any vanilla flavor tasted may not even be due to the presence of real vanilla |
| ➢ Substitution or Replacement a food product/ingredient with an alternate food product/ingredient of lower quality | • Tonka beans, which are banned from entry to the United States, instead of vanilla beans<br>• Coumarin, phytochemical found in Tonka beans, to increase the vanilla flavor perception |
| ➢ Coloring agents to produce a more attractive color | • Caramel in vanilla extracts to darken the substance's color additives like caramel to enhance the hue of an imitation vanilla so it more closely resembles real vanilla[9] |

---

[7] "Extend" in the context of flavoring is a modern way to say "dilute" or "adulterate" – to make what is being "extended" go farther. Since "dilute" and "adulterate" have a deserved negative connotation, the flavor industry and technical trade literature use the euphemistic term, "extend," or sometimes "fortify."

[8] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

[9] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

|  |  |
|---|---|
|  | • Annatto and turmeric in dairy products purporting to be flavored with vanilla, to darken the color to better resemble the hue of rich, yellow butter |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, derived from wood pulp, tree bark or coal tar |
| ➢ Ingredient list deception[10] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list – "ground vanilla beans" as containing actual vanilla flavor when they are devoid of any naturally occurring vanilla flavor |
| ➢ Diluting/Extending | • Combination with a variety of flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[11] |
|  | • "Spiking" or "fortification" of vanilla through addition of natural flavors which simulate the taste of vanilla, contrary to consumer expectations and law |

14. One or more of these "food fraud" typologies are evident in the Products.

II. The Representations are Misleading because the Flavor is Not Only Derived from Vanilla and/or the Amount of Vanilla is Insufficient to Independently Characterize the Products

---

[10] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar
[11] Berenstein, 423.

5

15. The front labels represent that the vanilla (i) flavor is exclusively derived from the vanilla plant and (ii) present in an amount sufficient to independently characterize the Products.

16. These representations are misleading because they do not reference flavors other than vanilla even though the ingredient lists reveal the Products contains "Natural Flavor."[12]

Ingredient List (Regular)

INGREDIENTS: ALMONDMILK (WATER, ALMONDS), CANE SUGAR, CALCIUM CARBONATE, ==NATURAL FLAVORS==, SUNFLOWER LECITHIN, SEA SALT, POTASSIUM CITRATE, LOCUST BEAN GUM, GELLAN GUM.

17. "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors.[13]

18. Reasons for combining flavors prior to their addition to the food include the volatile nature of flavoring constituents, ease of us and consistency.

19. If the "natural flavor" only consisted of vanilla, this more valuable ingredient would be listed, i.e., vanilla flavor or flavoring, instead of the opaque and ubiquitous "natural flavor."

20. The declaration of "natural flavor" in products represented as characterized by vanilla refers to a combination of flavors from real vanilla and non-vanilla natural sources, such as tree bark or lignin.

---

[12] The unsweetened vanilla product contains the same ingredients except for cane sugar.
[13] 21 C.F.R. § 101.22(a)(3).

6

21. When these non-vanilla flavors simulate and resemble vanilla, they are described as "other natural flavors."[14]

22. The ingredient most commonly used in the trade when requiring some vanilla flavor with non-vanilla flavors is "Vanilla With Other Natural Flavors" or "Vanilla WONF."[15][16]

23. Because the Products contain flavor not derived from the characterizing food ingredient of vanilla, their unqualified, prominent and conspicuous representation as "Vanilla" and "Unsweetened Vanilla" is false, deceptive and misleading.

24. If the amount of vanilla is insufficient to independently characterize the Products, a non-misleading description and name would be "Natural Vanilla Flavored Almondmilk" or "Vanilla Flavored Almondmilk," if the "natural flavors" or "other natural flavors" do not purport to simulate vanilla or contain vanillin.[17]

25. The composition of the natural flavors used in the Products is known only to defendant at this time such that an accurate and non-misleading flavor designation cannot be determined beyond the present conclusion that the unqualified representation as vanilla is misleading.

III. Conclusion

---

[14] 21 C.F.R. § 101.22(i)(1)(iii) ("If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.")
[15] An ingredient designated "[CHARACTERIZING FLAVOR] + WONF" should contain enough flavor from the food or flavor which precedes "WONF" to sufficiently independently characterize the food. At this time and until discovery, the precise amount of vanilla contained in the Products' "Natural Flavor" is unknown.
[16] Some have argued that the vanilla standards of identity prohibit "extending" – adulterating or diluting – vanilla through the addition of "other natural flavors" because this would result in boosting or fortification of the vanilla flavor with vanillin.
[17] 21 C.F.R. § 101.22(i)(1)(i) ("If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food").

26. The proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because it is more expensive and desired by consumers.

27. Had Plaintiff and Class members known the truth about the Products, they would not have bought the Products or would have paid less.

28. The Products contain other representations which are misleading and deceptive.

29. As a result of the false and misleading labeling, the Products cost no less than $6.99 per 48 OZ (1.4 L), excluding tax – premium prices compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

30. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

31. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

32. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

33. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

34. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

35. Plaintiff is a citizen of Westchester County, New York

36. Defendant is a Delaware limited liability company with a principal place of business in Los Angeles, California (Los Angeles County) and upon information and belief, no member of

8

defendant is a citizen of New York.

37. During the class period, Plaintiff purchased one or more of the Products identified herein for personal use, consumption or application based on the above representations, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

38. Plaintiff would consider purchasing the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

39. The classes will consist of all consumers in all 50 states with sub-classes for the individual states and nationwide classes.

40. The complaint contains Plaintiff(s) from: New York, who will represent her state sub-class of persons who purchased any Products containing the actionable representations during the statutes of limitation.

41. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if Plaintiff and class members are entitled to damages.

42. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

43. Plaintiff is an adequate representative because his interests do not conflict with other members.

44. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

45. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

46. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

47. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

48. Plaintiff asserts causes of action under the consumer protection statutes of New York and may be subsequently joined by plaintiffs from other states under the consumer protection acts below.

   a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;
   b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;
   c. Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et. seq.*;
   d. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;
   e. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;
   f. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;
   g. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;
   h. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;
   i. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;
   j. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;
   k. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;
   l. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;
   m. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;
   n. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;
   o. Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et. seq.*;
   p. Iowa Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 *et seq.*;
   q. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;
   r. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;
   s. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;
   t. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;
   u. Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 *et seq.*;
   v. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws Ch. 93A;
   w. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;
   x. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*;

y. Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;
z. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;
aa. Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;
bb. Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;
cc. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;
dd. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;
ee. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;
ff. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;
gg. New York General Business Law ("GBL") §§ 349 & 350;
hh. North Carolina General Statutes Chapter 75: Monopolies, Trusts and Consumer Protection, N.C. Gen. Stat. §§ 75-1.1 through 75-35;
ii. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;
jj. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;
kk. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;
ll. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);
mm. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 *et. seq.*;
nn. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;
oo. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;
pp. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;
qq. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;
rr. Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et. seq.*;
ss. Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et. seq.*;
tt. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;
uu. Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 *et. seq.*;
vv. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;
ww. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;
xx. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*; and
yy. Wyoming Consumer Protection Act, Wyo. Stat. Ann.§§ 40-12-101 *et. seq.*;

49. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

50. Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

51. After mailing appropriate notice and demand, any subsequent plaintiff in a State where notice is required prior to seeking damages under that State's Consumer Protection Statutes,

will have mailed and/or have amended this complaint to request damages.

52. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because (1) it gives the impression to consumers the Products are only flavored by the characterizing ingredient and contains more of the characterizing ingredient than they actually do and (2) the ingredient list fails to dispel ambiguity and reinforces the front-label impression as to a greater amount of the characterizing ingredients.

53. Plaintiff and class members relied on the representations and omissions, paying more than they would have, causing damages.

## Negligent Misrepresentation

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing the characterizing ingredient was present in greater amount than it was and affirmatively representing the Products was flavored only by vanilla.

56. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

57. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

58. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

59. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the

Products.

60. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

61. Plaintiff incorporates by reference all preceding paragraphs.

62. Defendant manufactures and sells products which contain the identified characterizing ingredients and/or flavors which are desired by consumers.

63. The Products warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

64. Defendant's front labels informed and warranted to Plaintiff the Products contained only the characterizing ingredients to impart flavor, and that they were present in amounts sufficient to independently characterize the food and that the flavor imparted to the Products was a result of the food ingredients and not "natural flavors" or "other natural flavors."

65. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products flavoring on the front labels and knew or should have known same were false or misleading.

66. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

67. Plaintiff provided or will provide notice to defendant and/or its agents, representatives, retailers and their employees.

68. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

69. Plaintiff and class members relied on defendant's claims, paying more than they would have.

## Fraud

70. Plaintiff incorporates by references all preceding paragraphs.

71. Defendant's purpose was to sell products which purported to contain valuable and desired characterizing ingredient(s) or flavor(s), and represent the Products were exclusively or predominantly flavored from that ingredient and contained sufficient independent amounts of same.

72. The Products were not flavored exclusively from the characterizing ingredient but from flavor compounds blended together and labeled as "natural flavor" and "artificial flavor."

73. Defendant's fraudulent intent is evinced by its failure to accurately indicate the Products contained flavor from non-vanilla sources on the front label, because it knows consumers prefer foods that are flavored from food ingredients instead of added flavor ingredients and contain enough of the characterizing food ingredients to flavor the Products.

74. Defendant's intent was to secure economic advantage in the marketplace against competitors by appealing to consumers who value products with sufficient amounts of the characterizing ingredients for the above-described reasons.

75. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

76. Plaintiff incorporates by references all preceding paragraphs.

77. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for members of the State Subclasses pursuant to the consumer protection laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 22, 2019

                                        Respectfully submitted,

                                        Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

                                  *-and-*

                                        Reese LLP
                                        Michael R. Reese
                                        100 West 93rd Street, 16th Floor
                                        New York, NY 10025
                                        Telephone: (212) 643-0500
                                        Facsimile: (212) 253-4272
                                        mreese@reesellp.com

7:19-cv-08785
United States District Court
Southern District of New York

Michelle Ann Cicciarella, individually and on behalf of all others similarly situated

                                      Plaintiff

    - against -

Califia Farms, LLC
                                      Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd., #311
   Great Neck, NY 11021
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: September 22, 2019

                                                                          /s/ Spencer Sheehan
                                                                            Spencer Sheehan