**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELLE ANN CICCIARELLA et al., individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    -against-<br><br>CALIFIA FARMS, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CASE NO. 7:19-cv-08785-CS |

**DECLARATION OF SPENCER SHEEHAN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF SHEEHAN & ASSOCIATES, P.C.**

I, Spencer Sheehan, declare as follows:

1.     My firm is court appointed co-lead counsel in this litigation.

2.     I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

3.     I have personal knowledge of the matters set forth herein based upon my active supervision and participation in all aspects of the litigation.

4.     I am the founding attorney of Sheehan & Associates, P.C., a law firm established in 2013 that specializes in class action litigation on behalf of consumers and small businesses in both federal and state courts throughout the United States.

5.     I am a member in good standing of the state bar of New York as well as numerous federal courts, including but not limited to the U.S. District Courts for the Southern, Eastern Northern and Western Districts of New York; the Northern Districts of Illinois; and the Northern District of Florida.

6.      I am also a member of the federal bar of the U.S. Court of Appeals for the Second Circuit.

7.      After I became an attorney in late 2011, I worked in 2012 for Siler & Ingber LLP, a law firm that represents municipalities and local government agencies in legal disputes.

8.      This experience was invaluable as I made frequent appearances in State Supreme Courts in Nassau, Suffolk, Westchester, Duchess, Rockland, and Orange counties.

9.      Following this, I worked in employment law for Neil Frank, PC, a firm specializing in representing individuals subjected to violations of state and federal laws related to minimum wage, workplace safety and discrimination.

10.     In late 2013, I started my own practice, Sheehan & Associates, P.C.,

11.     For the past several years, I have devoted my practice completely to consumer litigation issues and specifically, food and beverage labeling.

12.     A central theme of my food litigation practice has been the focus on standards of identity and consumer protection.

13.     The standards of identity I have addressed in my cases include butter (technically not subject to a standard of identity), canned tomatoes, margarine, egg whites, cocoa, chocolate, ice cream, juices and most notably, vanilla.

14.     As a result of my work in the vanilla area, I was invited to speak at the Vanilla Conference 2019 in Tanzania.

15.     For the past two years, I have given an annual lecture to the Food Law course at the University of Wisconsin-Madison Law School, taught by Barry Levenson.

16.     My firm has vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement process.

17.     Based on my experience, I believe the Settlement to be a terrific outcome for consumers, which is fair, reasonable, and adequate under Federal Civil Procedure Rule 23.

## **Sheehan & Associates, P.C. Expended Significant Time On The Matter**

18.     This matter arises out of Defendant's manufacturing, advertising, selling, and distributing of a variety of Defendant's non-dairy beverages ("Products"), which are alleged to have misled consumers due to representation on the Products' regarding the ingredients and claims.

19.     In my pre-suit investigation, I relied on a close network of professionals involved in all aspects of vanilla – from the growing in Madagascar, the export-import trade, the processing and applications in food and beverages and labeling.

20.     These relationships could only be built with significant time and trust, due to the highly secretive nature of those in the flavor industry and its supply chains.

21.     Most were reluctant to speak with me lest they cast a negative light on practices of their former employers.

22.     Over months and years, these individuals have shared knowledge that is not found in any rule, law, or regulation.

23.     I have worked closely with various laboratories to understand the range of analytical techniques that can be applied to vanilla products, to ascertain authenticity and to determine quality.

24.     I have hired independent Ph.D. historians to obtain entire sections of FDA and Bureau of Agriculture archival material and rulemaking dockets at the National Archives in College Park, Maryland and at the Library of Congress.

25.     Specifically, my research obtained various FDA memoranda which was either

unknown to many or overlooked in the decades since it was first written.

26.     I obtained and reviewed Congressional Hearings and Committee Testimony that formed the basis for *why* Congress authorized the FDA to enact the vanilla standards.

27.     In this action, I signed up both plaintiffs and was their primary contact throughout this litigation.

28.     This included answering many questions so they knew what was expected of them and that they would be willing to do what was necessary on behalf of a certified class.

29.     Having been assured based on diligent research that the Products at issue were labeled in a way inconsistent with what consumers expected, my co-counsel and I filed the complaint on September 22, 2019 (Dkt. 1).

30.     The Parties engaged in detailed discovery pursuant the Federal Rule of Civil Procedure 26, with more than 79,000 pages of documents produced  and examined.

31.     A mediation was held on November 25, 2019 before Donald Morrow, JAMs, in Irvine, California.

32.     To conserve resources, I agreed that only my co-counsel, Mr. Reese, should attend the mediation and that I would be on-call, as necessary.

33.     Following the mediation, the Parties agreed to the material terms of the class action settlement filed with the Court.

34.     My firm, along with co-lead counsel, negotiated an amount for fees and costs only after agreement as to the relief for the class.

35.     My firm submitted and mailed the assembled motion papers for preliminary approval to the Court.

36.     The schedule attached as Exhibit 1 is a detailed summary indicating the amount of

time, by category, spent by the partners, other attorneys, and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates.

37.     The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court for review *in camera*.[1]

38.     Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

39.     The hourly rates for the partners, other attorneys, and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates consistent with attorneys who specialize in this area, and such rates have been used in the lodestar cross check accepted by courts in other class litigation.

40.     The total number of hours expended on this litigation by my firm is 92.5 hours.

41.     The total lodestar for my firm is $71,687.50.

42.     My firm's lodestar figures are based upon the firm's billing rates, which do not include charges for expense items.

43.     Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

44.     As detailed in Exhibit 2, my firm has incurred a total of $405.56 in un-reimbursed expenses in connection with the prosecution of this litigation.

45.     The expenses incurred in this action are reflected on the books and records of my firm, which are available at the request of the Court.

---

[1] These records may include information concerning privileged and/or confidential attorney-client communications or work product.

46.     These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses as charged by the vendors. Third-party expenses are not marked up.

47.     By agreement between Plaintiffs' Counsel, my firm is not charging separately for the following costs and expenses: secretarial and clerical overtime, including their meals and local transportation; word processing; secretarial/clerical time for document preparation; time charges for routine copying, faxing or scanning; incoming/outgoing fax charges; office supplies (such as paper, binders, etc.); special publications; continuing legal education seminars; working meals for attorneys (with the exception of meals with clients, expert or other witnesses, meals while traveling for the case, or meal expenses for meetings between Plaintiffs' Counsel); and local overtime meals and transportation for attorneys.

48.     With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is my firm's résumé and a brief biography of me and my work.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May 2020, at Great Neck, New York.


*/s/Spencer Sheehan*
Spencer Sheehan

**EXHIBIT 1**

*Cicciarella v. Califia Farms,*

**No. 19-cv-08785 (S.D.N.Y.)**

**SHEEHAN & ASSOCIATES, P.C.**

**TIME REPORT — Inception through May 28, 2020**

| Name/Position | A | B | C | D | E | F | G | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Sheehan/P | 69.50 | 2.5 | 1.75 | 14.50 | 4.00 | 0.00 | 0.25 | 92.50 | $775.00 | $71,687.50 |
| **TOTAL LODESTAR** | 69.50 | 2.5 | 1.75 | 14.50 | 4.00 | 0.00 | 0.25 | 92.50 | --- | $71,687.50 |

**CATEGORIES**

A. Pre-Filing Investigation and Initial Complaint

B. Legal Research, Pleadings, Briefs, and Motions After Initial Complaint

C. Discovery and Post-Filing Investigation

D. Experts and Consultants

E. Litigation Strategy, Analysis, and Case Management

F. Court Appearances & Preparation

G. Settlement

**POSITION**

P = Partner

A = Associate/Staff Attorney

C = Senior Counsel/Of Counsel

PL = Paralegal

O = Other

**EXHIBIT 2**

***Cicciarella v. Califia Farms.***
**No. 19-cv-08785 (S.D.N.Y.)**
**SHEEHAN & ASSOCIATES, P.C.**

**EXPENSE REPORT — Inception through May 28, 2020**

| **Categories:** | **Amount** |
|---|---|
| Filing/Witness Fees | $400.00 |
| Court Reporters/Transcript/Video | $0.00 |
| Postage/Mailing Fees | $5.56 |
| Experts/Consultants/Professional Services | $0.00 |
| Mediation | $0.00 |
| Transportation to Court | $0.00 |
| **TOTAL EXPENSES:** | $405.56 |

**<u>EXHIBIT 3</u>**

<u>Sheehan & Associates, P.C.</u>

**<u>Spencer Sheehan</u>**

Mr. Sheehan represents parties in a range of false advertising litigation. After Mr. Sheehan became an attorney in late 2011, he worked on behalf of municipalities and local government agencies in legal disputes. Following this experience, Mr. Sheehan worked for a plaintiff's law firm representing individuals subjected to violations of state and federal laws related to minimum wage, workplace safety and discrimination.

Of notable actions by Mr. Sheehan on behalf of consumers includes, *Liberski, et al v. Rhapsody International Inc*., San Francisco County, California Superior Court, Case No. No. CGC-12- 517061. In 2014, the parties reached a class wide settlement ("Rhapsody Subscriber Litigation Settlement"). Mr. Sheehan, with the California firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP, were appointed as lead counsel.

In December 2016, Mr. Sheehan began focusing his practice exclusively on consumer advertising issues exclusively. He has been on the forefront of food labeling cases based on original, instead of derivative types of claims.

For instance, Mr. Sheehan was the first attorney to address "raw" juice products which were alleged to be treated with a non-thermal technology which had substantially the same effects as traditional thermal pasteurization. *See e.g. Campbell v. Freshbev LLC*, Case No. 1:16-cv-07119 (E.D.N.Y.), *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 342 (E.D.N.Y. 2018) ("Therefore, plaintiff has successfully pleaded his GBL §§ 349 and 350 claims with respect to the 'unpasteurized' label on the Cranberry juice."). These cases attempted to apply the applicable law to the effects of novel technologies which were not considered at the time the FDA enacted regulations in this area.

Mr. Sheehan's pro bono work includes representing people with exotic or non-traditional animal companions.

Mr. Sheehan holds a Bachelor of Science Degree from Georgetown University in Foreign Service (2002) and a Master's Degree in International Relations from the School of Advanced International Studies (SAIS), Johns Hopkins University (2006). Mr. Sheehan obtained a Juris Doctorate from Fordham University School of Law (2010). Mr. Sheehan also was a member of the United States Marine Corps as a Reservist.