UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE ANN CICCIARELLA, and TANASHA RIETDYK et al., individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>- against -<br><br>Califia Farms, LLC<br><br>Defendant | CASE NO. 7:19-cv-08785-CS |

**SUPPLEMENTAL DECLARATION OF CARLA A. PEAK RE: NOTICE PROCEDURES**

I, Carla A. Peak, declare as follows:

1. My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2. This Declaration supplements my prior declaration regarding the implementation of the Notice Plan (Declaration of Carla A. Peak Re: Notice Procedures, ECF#23-6). The Notice Plan concluded on June 2, 2020, prior to the submission of my prior declaration (Declaration of Carla A. Peak Re: Notice Procedures, ECF#23-6). This Declaration provides final details regarding the completion of the Notice Plan.

**NOTICE PLAN UPDATES**

3. KCC purchased 407,500,000 internet impressions to be delivered over various websites, and the social media sites Facebook, Instagram, and Twitter. The digital media campaign ran from April 3, 2020 through June 2, 2020. At the conclusion of the Notice Plan, KCC determined that a total of 414,908,796 digital impressions were delivered, resulting in an additional 7,408,796 digital impressions at no extra charge.

4. As indicated in my prior declarations, Declaration of Carla A. Peak In Support of Settlement Notice Plan (ECF# 9-5) and Supplemental Declaration of Carla A. Peak In Support

of Settlement Notice Plan (ECF# 20-1), the Notice Plan was designed to reach 80% of likely Settlement Class Members on average 2.7 times.

5.     The Notice Plan, as implemented, reached 80.4% of likely Settlement Class Members on average 2.7 times each. The reach of the Notice Plan was calculated using standard advertising industry resources and formulas, such as GfK MRI and Comscore, Inc.[1][2]

**RESPONSE UPDATES**

6.     The deadline for Settlement Class Members to file claims in this matter is October 11, 2020.  To date, KCC has received 60,193 timely-filed claim forms.

7.     The deadline for Settlement Class Members to opt-out of the settlement or object to it was June 11, 2020. No Settlement Class Members have opted out of the settlement. While KCC has not received any objections, Counsel has received a total of three. The first two objections were attached to my previous declaration. The most recent objection, submitted by Dalicia Reales, is attached as Exhibit A.

I, Carla A. Peak, declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of July 2020, at Sellersville, Pennsylvania.

*Carla Peak*

Carla A. Peak

---

[1] GfK MRI (MRI) is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of over 6,500 product and service brands across 600 categories, along with readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 25,000 consumers in their homes, MRI's Survey of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

[2] comScore, Inc. (Comscore) is a leading cross-platform measurement and analytics company that precisely measures audiences, brands and consumer behavior everywhere, capturing 1.9 trillion global interactions monthly. Comscore's proprietary digital audience measurement methodology allows marketers to calculate audience reach in a manner not affected by variables such as cookie deletion and cookie blocking/rejection, and invalid traffic (IVT) (also known as non-human traffic or bots), allowing these audiences to be reached more effectively. Comscore operates in more than 75 countries, serving over 3,200 clients worldwide.

# Exhibit A

## Dalicia N Reales Class Member for Califia Farms Non-Dairy Class Action Settlement

1 message

**Dali Real** <dreales89@gmail.com>  Thu, Jun 11, 2020 at 8:33 PM
To: mreese@reesellp.com

Dear Mr. Reese,

My name is Dalicia N. Reales and I am class member for the Califia Farms Non-Dairy Class Action Settlement. I understand June 11, 2020 is the last day to request exclusion or objection to the settlement amount of $0.50 to $1 per product purchased for up to 15 products (totaling at maximum $15). I also understand the final approval hearing for the Califia Farms non-dairy class action settlement is July 9, 2020. Therefore, I hope this email finds you well today on Thursday the 11th of June 2020, as I would like to formally object this settlement amount and request higher compensation.

The settlement claim of maximum $15 is not sufficient for the violation of consumer rights. Califa's mislabeling and deceptive marketing of their nut-based milk products as containing vanilla when in fact the products contained artificial vanilla violates: Federal Trade Commission Act Section 5(a), Anti-Trust Laws, breach of duty, Federal Trade Commission Act 16 C.F.R. Part 501,
Fair Packaging and Labeling Act, and therefore have violated federal guidelines.

In 2015, I began transitioning to a vegan lifestyle after battling inflammatory health conditions. Additionally, I work in cancer research (with a Masters in Epidemiology) and have researched at length the benefits of a more plant-rich lifestyle. I've grown up in a mostly pescatarian household, so omitting poultry and red meats weren't a challenge for me. Instead, the biggest challenge I thought I'd face was omitting milk and other dairy products from my diet. As a resolve, I tried all different types of plant and nut based 'milks' in an attempt to find a replacement for dairy. Califa wasn't widely sold in stores in my neighborhood in 2015 (Jamaica, NY) where healthy options aren't as readily available as fast-food chains and liquor stores. Therefore, when I found Califa's 48 oz coconut flavored almond milk a 24-minute drive from my home (in a more affluent area's supermarket) I would travel nearly monthly to purchase.

Califa in many supermarkets is pricier than it's competitors (Silk, Blue Diamond, etc.) and averages $5 per bottle. Therefore, a compensation of $0.50 or $1 per bottle purchased is not enough for deceiving consumers like me. I have spent time traveling and my hard earned money to purchase a product made by a company who deceived me by mislabeling artificial ingredients as natural.

I would like to understand my options for a more reasonable compensation. Violation of the Federal Trade Commission Act serves a penalty of $43,280 per violation. Please respond within 30 days at the email address provided (dreales89@gmail.com) or via phone: 347-833-9112 or certified mail to: 7602 21st ave 1G, Brooklyn NY 11214.

Warmest Regards,
Dalicia N. Reales